In re Milton Martin
**RETZLAFF, Debtor.**

**Bankruptcy No. 84–04082.**

United States Bankruptcy Court,
N.D. Iowa.

July 9, 1986.

John Harmelink, Yankton, S.D., for debtor.

William L. Edmonds, Sioux City, Iowa, for Federal Land Bank and Production Credit Assoc.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge, sitting by designation.

The matter before the court is a Motion for Confirmation of the Debtor's Plan pursuant to section 1129(b)(1) of the Bankruptcy Code. The debtor, Milton Martin Retzlaff, (DEBTOR), filed his Chapter 11 petition on March 5, 1984. Both his plan and disclosure statement were filed on October 24, 1985, with the disclosure statement ultimately approved on March 28, 1986. Production Credit Association of the Midlands (PCA) and Federal Land Bank of Omaha (FLB) object to confirmation of the plan. The debtor, accordingly, moves for confirmation pursuant to section 1129(b)(1) of the Bankruptcy Code. A hearing was held before the undersigned on May 19, 1986. The facts as relevant are as follows:

## FINDINGS OF FACT

The debtor has been involved in the cattle business since 1958 or 1959 and bought the present ranch in 1961. In 1960, the debtor was involved in a costly divorce. Adverse weather conditions have affected the debtor's operation from 1981 through 1984, and the debtor had two poor calf crops during that time.

The debtor owns 520 acres of land, some which is used for growing cash crops and some which is used for grazing and growing feed. The debtor also rents additional land as needed. The debtor is an excellent husbandman. He manages and handles his cattle very well as is evidenced by his percentage calf-crop as of the date of this hearing, which was ninety-seven and one-half percent (97½%) thus far this year, after calving out 242 cows. The debtor's ability as a cattleman is also evidenced by the excellent quality of his current breeding herd.

The debtor's two major secured creditors are PCA and FLB. PCA's debt as of the date of filing was approximately \$200,-000.00. The value of PCA's collateral as of the date of filing and as of the date of confirmation is as follows:

| Type of Collateral | Filing Value | Confirmation Value |
|---|---|---|
| Cattle | \$187,640.00 (405 hd.) | \$211,970.75 (app. 600 hd.) |
| Crops | \$6,750.00 | \$6,045.00 |
| Machinery and Equipment | \$34,350.00 | \$40,900.00 |

These figures do not include the value of PCA's second mortgage on the debtor's real estate.

The debtor proposes to pay PCA's claim, currently at approximately \$207,441.54, in full over a twenty-year period by making principal payments each year of one-twentieth of the outstanding obligation plus inter-

est at PCA's variable rate. Based upon PCA's current rate, the first payment due would be $35,789.00. The debtor made an adequate protection payment to PCA on January 13, 1986, in the amount of $23,-032.39. PCA, the class 2 creditor, has voted to reject the plan.

FLB, the class 1 creditor, has also voted to reject the plan. FLB's claim as of the date of filing was approximately $215,-000.00. The FLB debt is secured by 520 acres of the debtor's real estate, which is valued on the disclosure statement at $900.00 per acre, for a total value of $468,-000.00. This property has increased in value approximately five percent (5%) between the date of approval of the disclosure statement and the date of the confirmation hearing. The debtor proposes to pay FLB in full by making twenty-five (25) annual payments of $10,000.00 principal plus interest at FLB's prevailing rate. The debtor made an adequate protection payment to FLB of $26,493.00 on January 13, 1986. Both FLB and PCA are clearly fully secured.

All seven class 3 unsecured creditors have voted to accept the plan. They will be paid in full, plus interest at twelve percent (12%) in two annual payments.

The debtor's disclosure statement cash flow for 1985 through 1987, which projected making the January 13, 1986 payments to PCA and FLB in December of 1985, projected a cash reserve going into 1986 at $15,879.00. Although the debtor's monthly report indicated an actual cash balance of $3,790.24 as of January 1, 1986, the debtor would have met his projections had he sold the cattle which he projected selling in 1985, instead of carrying them over into 1986. The debtor also owes $3,200.00 of real estate taxes which the debtor projects making with U.S.D.A. farm program payments. This is the first year that the debtor has been enrolled in the U.S.D.A. farm program.

The debtor feels that he can easily meet his cash flow projections which project a $2,337.00 estimated reserve for 1986, and a $13,968.00 reserve for 1987. His projections were made when farm input costs were at their peak. Energy prices have since declined. The debtor and an expert appraiser also testified that cattle prices will likely improve in the months and years ahead. The debtor does not strike the court as a pie in the sky dreamer, but appears to be a realistic and knowledgeable farmer and cattleman. He has not needed to borrow operating money this year.

The debtor's farm and ranch income will be supplemented by approximately $12,-000.00 per year which the debtor earns as a cattle order buyer for the Creighton Livestock Market.

## CONCLUSIONS OF LAW

A proposed plan of reorganization must meet all requirements of section 1129(a) of the Bankruptcy Code and cannot be confirmed without approval of all impaired classes of creditors unless the plan is capable of confirmation by "cramdown" pursuant to section 1129(b) of the Bankruptcy Code. 11 U.S.C. § 1129; *In re Hoff,* 54 B.R. 746, 750 (Bankr.D.N.D.1985). This court, having considered all requirements of section 1129 in view of this case, will only discuss those sections specifically raised by the objecting parties or those which this court, on its own review, feels are not met by the plan. A thorough discussion of this court's approach in analyzing a plan for confirmation purposes is set forth in *In re Hoff, supra.*

> Section 1129(a)(11) provides as follows: Section 1129(a)(11): Confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

PCA and FLB both object that the plan is not feasible. The Eighth Circuit Court of Appeals has set forth the standards to use in determining whether a plan is feasible or not likely to be followed by liquidation or further reorganization. The Eighth Circuit has held that the feasibility test must be "firmly rooted in predictions based on ob-

jective fact". *In re Clarkson*, 767 F.2d 417, 420 (8th Cir.1985). "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts". *Id.* (citing *In re Bergman*, 585 F.2d 1171, 1179 (2nd Cir. 1978)). "Pertinent factors to be considered include the business's earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company". *Id.* A plan should be approved if "it appears reasonably probable that the farmer can pay the restructured secured debt, over a reasonable period of time, at a reasonable rate of interest, in the light of farm prices and farm programs as of the date of confirmation". *In re Ahlers*, 794 F.2d 388, 392 (8th Cir.1986).

■ The debtor has increased the value of his cattle by $30,000.00 and by two hundred head (200) in number since the filing of his bankruptcy petition. He has a good calf crop on the ground again this year. He has also made adequate protection payments totaling approximately $50,000.00 to FLB and PCA. Following the bankruptcy, he will still have approximately $250,000.00 of equity in his operation. Although his cash on hand as of January 1, 1986, was less than projected, he would have met his projections had he sold cattle which he intended to sell in 1985 instead of carrying them over into 1986. The debtor is a sound manager and a good cattleman, and the court believes that his plan is feasible, will not likely be followed by reorganization, and meets the requirements of section 1129(a)(11) and the standards set forth by the Eighth Circuit.

■ FLB and PCA also object on the basis of section 1129(b)(1) and (2)(A)(i) which requires the court to confirm a plan if pertinent sections of 1129(a) are met and if the plan does not discriminate unfairly and is fair and equitable with respect to each impaired class which has not accepted the plan. PCA contends that its financing to the debtor was on a year-to-year basis and that an extension of its obligation over

twenty years should not be allowed. However, at the time PCA accepted the promissory obligation from the debtor, did it believe that the monies would be paid back on an annual basis? The court believes not. The notes were likely annual notes in form, but were probably renewal notes in substance. Nevertheless, PCA is heavily secured and the court does not believe the arrangement with them has been altered substantially simply by extending the payments over twenty years.

■ PCA also alleges that no guarantee exists that the current cattle numbers will be maintained, thus maintaining the current capital structure. However, the plan indicates that the debtor plans to continue rebuilding his cow herd. Furthermore, PCA will retain its security interest in the cattle pursuant to section 1129(b)(2)(A)(i)(I).

Accordingly, and for the reasons stated herein, the requirements of section 1129 are met and the debtor's Chapter 11 business reorganization plan is CONFIRMED.

IT IS SO ORDERED.